**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re** | § | **Chapter 11** |
| | § | |
| **MARX STEEL, LLC** | § | **Case No. 20-31849 (MI)** |
| | § | |
| **Debtor.** | § | |
| | § | |

**DECLARATION OF NATHANIEL MARKS IN SUPPORT OF DEBTOR'S**
**CHAPTER 11 PROCEEDINGS AND FIRST DAY PLEADINGS**

Nathaniel Marks declares and says:

1.     Marx Steel, LLC ("**Debtor**") is a Texas limited liability company formed in 2007 and based in Houston.  I am and have been the principal of the Debtor since 2008.

**A.     General Background**

2.     The Debtor is a steel fabricator and plate processing company that manufactures sub-components and sells raw steel plate material to companies in the oil & gas, gas compression, and construction industries.

3.     Historically, Exterran Corp. ("**Exterran**") accounted about 40% of the Debtor's business.  In 2018 and 2019, Exterran significantly increased orders and became approximately 85% of the Debtor's business.  This included 18 individual orders which spanned through Q4 2019 and were projected to provide $3 million in revenue to the Debtor.

4.     Acceptance of the Exterran projects in 2018 and 2019 required the Debtor to purchase a substantial amount of material and devote significant manpower to the jobs.  To meet capital needs to complete the orders, the Debtor changed its payment terms with Exterran to ensure quicker payments.  However, the Debtor still needed significant cash infusion to meet ongoing demand.

5.      In March 2019, to meet the cash shortfall, the Debtor entered into a Purchase and Sale Agreement (the "**Amerisource Agreement**") with Amerisource Funding, Inc. ("**Amerisource**").   T The Amerisource Agreement is a factoring agreement whereby Amerisource purchases certain accounts receivable and provides the Debtor with an advance of approximately 83% of the face value of the purchased receivable. The Amerisource Agreement provides for a reserve account to be maintained equal to 15% of each purchased receivable as well as fees payable to Amerisource between 1.65%-5.5% of the receivable, dependent on timing of collection.

6.      The Amerisource Agreement was also secured by a lien in substantially all of the Debtor's assets including accounts, chattel paper, inventory, equipment, instruments, investment property, documents, general intangibles and intellectual property.  As of the Petition Date, the Debtor owed Amerisource about $280,000.00.

7.      In September 2019, Exterran failed to timely pay open invoices.  This resulted in a cash shortage that caused the Debtor to slow pay vendors.  Moreover, it prevented the Debtor from borrowing additional funds under the Amerisource Agreement and caused it to incur additional fees on the Amerisource Agreement.

8.      By mid-October 2019, Exterran owed the Debtors approximately $374,000. Exterran said it would pay the invoices but indicated that there would likely be a delay in payment.  After numerous inquiries, the Debtor received a response from Exterran's general counsel directing all future correspondence to him.

9.      Although Exterran made one payment in November 2019, it did not pay all open invoices.  Additional invoices were submitted after November 2019 that also went unpaid.

10.     As a result of its refusal to pay invoices, Amerisource sent demand letters directly to Exterran in accordance with the Amerisource Agreement.  The Debtor also refused to perform additional work unless the communicated with the Debtor and Amerisource about the open invoices.  In response, Exterran cancelled all open orders with the Debtor, including orders where the Debtors had already purchased significant materials to use towards completion.

11.     With no revenue and no means to borrower further under the Amerisource Agreement, the Debtor became delinquent on rent and was unable to pay vendors.  The Debtor started to receive demands and threats of lawsuits.  Faced with these looming threats, the Debtor made the decision to auction off excess equipment and materials some of which was purchased specifically for the cancelled Exterran projects.  It was believed at the time the proceeds from the sale would be sufficient to make payments to creditors and stave off further collection efforts.

12.     On February 6, 2020, Plant & Machinery Inc.("**PMI**") conducted an auction of the excess equipment and materials which resulted in approximately $250,000 in proceeds (the "**Auction Proceeds**").  This recovery was far lower than what was originally anticipated from the auction.  Prior the Petition Date, the costs of the auction and certain ad valorem property taxes on Debtor's leasehold were paid from the Auction Proceeds.  As of the Petition Date, the net Auction Proceeds available are $159,900.06 (the "**Net Action Proceeds**").  PMI is currently holding the Net Auction Proceeds.

13.     The Net Auction Proceeds were insufficient to pay off the Debtor's creditors.  Also, by this time, the Debtor was subject to numerous lawsuits and threats of injunction.  After much deliberation the decision was made to file a voluntary bankruptcy petition.  The

goal in this case is to stabilize operations on a smaller scale with the Debtor's two (2) remaining employees and repay pre-petition creditors through a Chapter 11 Plan of Reorganization.

14.     In an attempt to reduce costs, on February 29, 2020, the Debtor vacated its leased space and has moved its equipment and materials to a storage facility located at 9200 Market St., Houston, TX 77029.  The Debtor is looking for a rent space for operations moving forward.

15.     Amerisource also initiated a lawsuit against Exterran on February 6, 2020 seeking payment of certain open invoices with totaling approximately $373,000.  The case is pending as Cause No. 2020-08466, *Amerisource Funding, Inc. v. Exterran Corporation, Inc. et al.*, in the 269th District Court of Harris County, Texas (the "**Exterran Lawsuit**"). Additional invoices in excess of $100,000 are also owed by another division of Exterran and are the subject of collection attempts.

**B.      First Day Motions**

16.     The Debtor has filed two first day motions along with this Declaration.

17.     The first is a motion to allow the Debtor to pay its 3 employees pre-petition wages of $11,318.00 (the "**Wage Motion**").  This includes a salary owed to me of $7,308.00 and wages owed to two hourly workers of $2,005.00 each.

18.     The second is a motion to allow the Debtor to use cash collateral (the "**Cash Collateral Motion**").  Amerisource has agreed to the 14-day budget (the "**Budget**") attached to the motion.  The Budget will allow the Debtor to pay wages, rent a new space from the Auction Proceeds.

{871033/00110/01398801.DOCX 1 }

19.     I believe the relief requested in the Wage Motion and the Cash Collateral Motion are in the best interests of the Debtor, its estate, creditors and other parties in interests. If either motion is not approved, it will be impossible for the Debtor to restructure operations. Accordingly, I would ask that the relief requested in each motion be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 24, 2020.

/s/ Nathaniel Marks
Nathaniel Marks
Managing Member of Marx Steel, LLC